809 P.2d 57

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Mark Allen CORBIN, a/k/a Mark
Dykstra, Defendant–Appellant.**

**No. 11966.**

Court of Appeals of New Mexico.

Feb. 21, 1991.

Certiorari Denied April 3, 1991.

Tom Udall, Atty. Gen., Max W. Shepherd, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Bruce Rogoff, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

ALARID, Chief Judge.

Defendant was convicted of multiple counts of criminal sexual penetration, criminal sexual contact with a minor, contributing to the delinquency of a minor, and extortion. These convictions involved separate acts against four different minors. Defendant appeals his convictions of criminal sexual penetration in the second degree (counts 1 and 2); criminal sexual contact with a minor in the third degree (counts 7, 11, 12, 14, and 15); contributing to the delinquency of a minor (counts 13, 21–28); and extortion (counts 29 and 30).

Defendant raises four issues on appeal. Regarding counts 11 and 12, he challenges the sufficiency of the evidence to support his convictions for criminal sexual contact with a minor, M.C., under NMSA 1978, Section 30–9–13(A)(2)(a) (Cum.Supp.1990). He asserts the dates relating to counts 14, 15, and 21–30 were not adequately supplied and his convictions on these counts should be reversed. Defendant contends the jury instruction relating to count 13, contributing to the delinquency of a minor, M.C., warrants reversal based on the alternative wording of the instruction. Defendant also asserts the denial of his motion to sever the counts was reversible error.

Finally, defendant has filed a motion to add two issues concerning whether the prosecution was untimely and whether restitution from his prison account was improper. *See State v. Rael*, 100 N.M. 193, 668 P.2d 309 (Ct.App.1983). *Cf.* SCRA 1986, 12–210(D)(3) and –213(A)(3) (Cum. Supp.1990) (parties no longer restricted to arguing only issues contained in docketing statement for appeals filed on or after July 1, 1990). Defendant raises these issues pursuant to *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967), and *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct.App.1985).

We deny the motion to add issues, affirm the convictions, and reverse and remand the judgment and sentence for the correction of a clerical error.

## MOTION TO ADD ISSUES

 We deny the motion to add the new issues because the issues are so without merit as not to be viable. *See State v. Rael.* Prosecution against defendant was not untimely since a new indictment was obtained against defendant in August 1988, and his trial commenced in September 1988. *See* SCRA 1986, 5–604; *State ex rel. Delgado v. Stanley*, 83 N.M. 626, 495 P.2d 1073 (1972). NMSA 1978, Section 33–8–8(C)(2) (Repl.Pamp.1990), authorizes restitution to be paid from a prison account.

## SUFFICIENCY OF THE EVIDENCE

Under Section 30–9–13(A)(2)(a), the state must prove the defendant committed criminal sexual contact of a minor between the ages of thirteen and eighteen and the defendant was in a position of authority over the child and used the authority to coerce the child to submit to the sexual contact. "Position of authority" has been defined, by statute, to include an employer. NMSA 1978, § 30–9–10(D) (Repl.Pamp.1984). Force or coercion has been defined as including the use of threats of physical punishment, kidnapping, extortion or retaliation against the victim when the victim believes there is an ability to execute such threats. § 30–9–10(A)(3). The statute specifically states that "[p]hysical or verbal resistance of the victim is not an element of force or coercion." § 30–9–10(A)(4).

 In the present case, there is no dispute that defendant was M.C.'s employer. Defendant asserts, however, there is insufficient evidence that he used his position as

employer to coerce M.C. to submit to the sexual contact. *See State v. Gillette,* 102 N.M. 695, 699 P.2d 626 (Ct.App.1985). In reviewing a judgment of conviction, this court views the evidence in the light most favorable to the verdict and resolves all conflicts and indulges all reasonable inferences in favor of the judgment. *See State v. Lankford,* 92 N.M. 1, 582 P.2d 378 (1978). We will not substitute our judgment for that of the jury. *Id.*

In *Gillette,* the defendant was convicted of criminal sexual penetration despite the victim's testimony that his sexual relationship with the defendant was not coerced and he was never forced to have sex with defendant. Nevertheless, based on evidence of the defendant's position of authority in the victim's household and his use of that authority to coerce the victim, the defendant's conviction was affirmed. Specifically, this court relied on evidence that the defendant was 24 years old when he first moved in with the victim's family. He was physically large, had been in the Air Force, and worked as a security guard and paramedic. The victim was 12 years old and listened to the defendant more than his mother. The defendant acted as the child's "boss" and was described as his babysitter. The defendant testified that he had a close, confidential relationship with the victim and the victim frequently sought his advice. We determined that these facts and the reasonable inferences that can be drawn from them provided sufficient evidence to support the defendant's conviction for criminal sexual penetration.

In the present case, the victim, M.C., had just turned 16 years old at the time of the alleged incidents. Defendant was significantly older than M.C. Defendant had approached M.C., asking if he was looking for a job, and subsequently hired M.C. to help repair appliances. M.C. had been placed on probation and had been told by his probation officer to start looking for work. M.C. testified that the second day he worked for defendant, they went scavenging for appliances with a third person in defendant's pickup. While the third person was inside a laundromat, M.C. testified that defendant started talking to him about "copping off"

and showed M.C. what he meant when "he reached over and got my penis." M.C. testified that he was scared and confused and did not know what to do. He asked defendant to drop him off right there so he could walk to his girl friend's home nearby. Defendant said no and that M.C. had to help defendant unload the appliances.

The next day, defendant and M.C. were having lunch in defendant's camper when M.C. told him that his back was sore, and defendant told M.C. he was a licensed chiropractor and would pop M.C.'s back for him. Sometime after telling M.C. he was a licensed chiropractor, defendant told him he helped kids make money by shooting pictures of them naked. After telling M.C. he would pop his back for him, defendant told M.C. to unbutton his shirt and, after feeling M.C.'s chest, tried to reach under M.C.'s pants. M.C. stepped back and pulled a knife in self-defense, but became scared because he was not sure it was right to pull out the knife. M.C. testified that he wanted to leave, but was afraid defendant might call the police. Defendant talked M.C. back into the trailer, showed him some Playboy magazines, closed the windows in the camper, and locked the door. Defendant told M.C. to unbutton his pants and put M.C.'s penis in his mouth. M.C. testified that he did the same to defendant.

█ Defendant relies on M.C.'s testimony that defendant did not threaten him or tell him that his pay would be withheld if he did not have sex with defendant and other evidence indicating a lack of coercion. As demonstrated in *Gillette,* however, this evidence does not necessarily invalidate a conviction. *See also State v. Lankford* (this court will disregard all evidence contrary to the verdict or judgment). Submission to an authority figure's request is coerced if achieved through undue influence or effected by external forces. *State v. Gillette.* Undue influence has been defined as "the result of moral, social, or domestic force exerted upon a party so as to control the free action of his will." *Trigg v. Trigg,* 37 N.M. 296, 301, 22 P.2d 119, 122 (1933); *State v. Gillette.*

M.C.'s testimony that he was scared and wanted to leave, defendant's refusal to drop M.C. off when requested because M.C. had to help unload the appliances, defendant's conduct the following day during a lunch break in work, M.C.'s confusion, desire to leave, and attempt to defend himself with a knife in defendant's camper, and defendant's closing the windows and locking the door to the camper are sufficient evidence for a jury to determine that defendant controlled M.C.'s will at least in part by using his position as M.C.'s employer. Although it is not clear whether defendant knew M.C. had been told by his probation officer to look for a job, it is reasonable to infer from this evidence that M.C. was more susceptible to submitting to an employer's demands or suggestions. The evidence was sufficient to support the conviction. *See State v. Lankford; State v. Gillette. See also Commonwealth v. Dorman*, 377 Pa.Super. 419, 547 A.2d 757 (1988).

In *Dorman*, the court affirmed a rape conviction based on evidence that the victim was 13, the defendant was her uncle and was 38 years old, and the defendant drove the victim to a remote wooded area. The victim protested by saying "don't," but did not otherwise resist. The defendant disrobed the victim and had sexual intercourse with her. The court stated, "While the force used to overcome the will of the victim in this case was to a large extent subtle and psychological, it nonetheless satisfies the element of forcible compulsion necessary to sustain appellant's conviction for rape." *Id.*, 377 Pa.Super. at 429, 547 A.2d at 762. Although victim in the present case was older, was apparently somewhat able to defend himself, and had more opportunity to leave than the victim in *Dorman*, the evidence was sufficient to demonstrate that defendant coerced M.C. to submit to sexual contact by using his position as employer.

## INADEQUATE DATES ON COUNTS 14, 15, and 21–30, RELATING TO C.J.

■ The counts at issue here charged defendant with committing illegal acts between or on various dates ranging from September 25, 1988, to January 27, 1989. In counts 14 and 15, defendant was charged with criminal sexual contact with C.J., and in counts 21–30, defendant was charged with contributing to the delinquency of C.J. The victim, C.J., testified that the first incident of having sex with defendant occurred in late September 1988. C.J. stated he had sex with defendant five to seven times a week between late September 1988 and the end of January 1989 in defendant's home. He testified that an incident of anal sex occurred in late November or early December. Although there may have been conflicting evidence of the exact time of this incident, all of the testimony placed the incident between late November and mid-January. This is sufficient evidence to support defendant's convictions on these counts. *See State v. Altgilbers*, 109 N.M. 453, 786 P.2d 680 (Ct. App.1989).

## JURY INSTRUCTION ON COUNT 13

■ Count 13 of the indictment charged defendant with contributing to the delinquency of a minor, M.C. The jury instruction on this count stated that the state had the burden of proving the following elements beyond a reasonable doubt:

1. The defendant engaged in fellatio and/or criminal sexual contact with [M.C.] and/or showed [M.C.] Playboy magazines;

2. This encouraged [M.C.] to conduct himself in a manner injurious to his morals;

3. [M.C.] was under the age of 18;

4. This happened in New Mexico on or between the 1st and 10th day of July, 1988.

Defendant asserts that the use of the alternative language allowed the jury to convict him of contributing to the delinquency of a minor merely by showing M.C. a Playboy magazine. Defendant contends that this constitutes an improper ground for conviction and, because it is impossible to know whether the jury convicted on this ground, that the conviction must be reversed. *See State v. Carr*, 95 N.M. 755,

626 P.2d 292 (Ct.App), *cert. denied,* 454 U.S. 853, 102 S.Ct. 298, 70 L.Ed.2d 145 (1981); *State v. Shade,* 104 N.M. 710, 726 P.2d 864 (Ct.App.1986). The question presented for review is whether the evidence supported an instruction that defendant's showing a Playboy magazine to M.C. encouraged M.C. to conduct himself in a manner injurious to his morals.

M.C. testified that on his second day of work, defendant tried to put his hands in M.C.'s pants. M.C. testified he pulled a knife in self-defense and defendant talked him back into defendant's trailer where he and defendant talked for a while. Defendant told M.C. he wanted him to get on top of the bed over the truck of the camper and "get it hard;" then defendant went to the closet and got some Playboy magazines. M.C. looked at the magazines. Defendant closed the windows and back door of the camper, told M.C. to unbutton his pants and put M.C.'s penis into his mouth. Defendant then had M.C. perform fellatio on defendant.

The state argues this evidence warrants the instruction given since defendant did not show M.C. the Playboy magazine in a vacuum. We note defendant was convicted of criminal sexual contact with M.C. in count 11, which had alleged the offense occurred between the same dates alleged in count 13. Even assuming, however, that the jury did not believe defendant actually had criminal sexual contact with M.C. after showing him the Playboy magazine, it could have determined that showing M.C. the magazine encouraged M.C. to conduct himself in a manner injurious to his morals since defendant's explicit purpose was to encourage M.C. to "get it hard" and defendant then told M.C. to unbutton his pants.

This evidence alone would be sufficient for the jury to find defendant guilty of contributing to the delinquency of a minor even without the evidence that defendant engaged in fellatio or had criminal sexual contact with M.C. *See generally State v. Pitts,* 103 N.M. 778, 780, 714 P.2d 582, 584 (1986) (intent of NMSA 1978, Section 30–6–3 (Repl.Pamp.1984) is "to extend the broadest possible protection to children,

who may be led astray in innumerable ways"); *State v. McKinley,* 53 N.M. 106, 202 P.2d 964 (1949) (common sense of decency, propriety, and morality sufficient to apply statute to each case and determine what conduct is criminal under the statute). *See also* NMSA 1978, § 30–37–2 (Repl. Pamp.1989) (prohibiting providing certain sexually explicit material to minors); *State v. Leyba,* 80 N.M. 190, 453 P.2d 211 (Ct. App.1969) (indecent touching and talking indecently to a minor sufficiently charged offense of contributing to the delinquency of the minor where such conduct lead to indecent exposure and tended to cause or encourage the minor to conduct himself in a manner injurious to his morals).

Since the jury could have convicted defendant based either on the evidence of criminal sexual contact or on the evidence of showing the Playboy magazine to encourage M.C. to "get it hard" and subsequently telling him to unbutton his pants, we find no error in the jury instruction. *See State v. Carr* (where either ground charged will support a jury verdict, the verdict will stand).

## DENIAL OF MOTION TO SEVER

 Defendant alleges the trial court erred in refusing his request to sever the counts so he would have three separate trials on the charges involving the victims J.M. and M.C., the victim C.J., and the victim M.J. Defendant asserts he was prejudiced by the sheer number of the thirty-four counts against him. The number of counts alone, however, is insufficient to establish prejudice. *See State v. Burdex,* 100 N.M. 197, 668 P.2d 313 (Ct.App.1983); *State v. Montano,* 93 N.M. 436, 601 P.2d 69 (Ct.App.1979).

The severance of various counts for trial is a matter entrusted to the sound discretion of the trial court. *State v. Burdex.* The four victims in the present case were all boys between the ages of thirteen and sixteen. All of the victims had worked for defendant. The charges against defendant on each of the counts constituted acts of a similar nature, occurring between July 1988 and January 1989. We find no abuse of discretion in refusing to sever the

counts. *Id. See also State v. Hernandez,* 104 N.M. 268, 720 P.2d 303 (Ct.App.1986). *Cf. State v. Gallegos,* 109 N.M. 55, 781 P.2d 783 (Ct.App.1989) (modus operandi of crimes charged were not similar and were remote in time and place).

## CLERICAL ERROR IN JUDGMENT AND SENTENCE

In reviewing the judgment and sentence, a clerical error was discovered. The judgment and sentence reads as though no sentence was imposed with respect to count 11, and both a nine-year and a three-year sentence were imposed with respect to count 2. The error in the first full paragraph on the second page of the second amended judgment and sentence should be corrected by replacing the number "2" on line 5 with the number "11," and replacing the number "11" on lines 6 and 8 with the number "2." The district court may correct an illegal sentence at any time. *See* SCRA 1986, 5–801(A) (Cum.Supp.1990).

We affirm defendant's convictions, and reverse and remand the sentence for the correction of the clerical error.

IT IS SO ORDERED.

DONNELLY and HARTZ, JJ., concur.